1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

DAVID CONERLY,

Defendant.

Case No.  17-cr-00578-JSW-1

**ORDER DENYING MOTION TO
VACATE SENTENCE PURSUANT TO
SECTION 2255**

Re: Dkt. No. 124

Now before the Court for consideration is David Conerly ("Conerly")'s motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. section 2255 ("Section 2255").  The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it hereby DENIES the motion to vacate and DENIES a motion for certificate of appealability.

## BACKGROUND

On November 16, 2017, Conerly was indicted for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. section 922(g)(1).  (Dkt. No. 1.)

On June 19, 2018, Conerly pled guilty to the indictment.  (Dkt. No. 59.)  Conerly pled open, without an agreement, after declining several plea deals offered by the Government.  (*See* Dkt. No. 142, Ex. B, Declaration of Alan Dressler ("Dressler Decl.").)  At the plea hearing the Court conducted a Rule 11 plea colloquy, where Conerly explained he was voluntarily pleading guilty to avoid additional charges from the Government.  (Transcript of Proceedings on June 19, 2018 ("6/19/2018 Tr.") at 20:5-8.)

The Court sentenced Conerly to 108 months on November 20, 2018.  (Dkt. No. 68.)  The Presentence Report ("PSR") calculated Conerly's Criminal History Category ("CHC") as IV because it included an expunged state court conviction for marijuana.  (Dkt. No. 63, Probation

1   Presentence Report ("PSR").)  At the sentencing hearing, the Court accepted an argument made by

2   Conerly's attorney, Alan Dressler ("Dressler"), for the marijuana conviction to not be included in

3   the CHC calculation.  (*See* Dkt. No. 77, Transcript of Proceedings on November 20, 2018, at 10:4-

4   11.)  The Court determined Conerly to be at an offense level of 27 with a CHC of III, resulting in a

5   guidelines range of 87-108 months imprisonment.  (*Id.* at 10:12-17.)  On November 27, 2018,

6   Conerly appealed his conviction.  (Dkt. No. 69.)  The Ninth Circuit affirmed the conviction on

7   January 14, 2020.  (Dkt. No. 112.)

8        On January 3, 2022, Conerly filed a *pro se* motion to vacate, set aside, or correct his

9   sentence, pursuant to Section 2255.  (Dkt. No. 124.)  Conerly claims he received ineffective

10  assistance of counsel because Dressler failed to object to statements in the PSR, failed to

11  investigate and advise Conerly about the Government's plea offers, and failed to prepare and

12  advise Conerly about the open plea.  (Dkt. No. 147.)

13       The Court will address additional facts as necessary in the analysis.

14                                          **ANALYSIS**

15  **A.    Applicable Legal Standard.**

16       Section 2255 affords criminal defendants the opportunity to vacate, set aside, or correct a

17  sentence that violates the Constitution or the laws of the United States.  28 U.S.C. § 2255(a).

18  Section 2255 expressly provides, in pertinent part, that a district court shall grant an evidentiary

19  hearing "[u]nless the motion and the files and records of the case conclusively show that the

20  prisoner is entitled to no relief."  *Id.* § 2255(b).  "An evidentiary hearing is usually required if the

21  motion states a claim based on matters outside the record or events outside the courtroom."

22  *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989).  However, denial of a motion to

23  vacate a sentence without a hearing is appropriate when the record "affirmatively manifest[s] the

24  factual or legal invalidity of the petitioner's claims."  *Baumann v. United States*, 692 F.2d 565,

25  571 (9th Cir. 1982).

26       To justify the need for an evidentiary hearing, the petitioner may not rely on "[m]ere

27  conclusory statements."  *Id.*  However, "the petitioner need not detail his evidence, but must only

28  make specific factual allegations which, if true, would entitle him to relief."  *Id.*  Thus, a court

United States District Court
Northern District of California

2

1    may deny a Section 2255 motion without an evidentiary hearing if "viewing the petition against

2    the record, its allegations do not state a claim for relief or are so palpably incredible or so patently

3    frivolous as to warrant summary dismissal." *Id.*

4        For reasons discussed below, the issues raised by Conerly may conclusively be decided on

5    the record.  Accordingly, an evidentiary hearing on Conerly's claims is not warranted.

6    **B.    Conerly's Petition is Timely.**

7        The Government opposes the timeliness of Conerly's petition.  To establish a claim for

8    ineffective assistance of counsel, a petitioner must file a Section 2255 claim within one year of

9    when the judgment of conviction becomes final.  28 U.S.C. § 2255(f)(1).  The judgment of

10   conviction of a prisoner who has petitioned for certiorari becomes final, for purposes of the one-

11   year period of limitation in Section 2255, when the Supreme Court denies certiorari after a direct

12   appeal.  *Clay v. United States*, 537 U.S. 522, 527 (2003).

13       The Ninth Circuit affirmed Conerly's conviction on January 14, 2020.  (Dkt. No. 112.)  On

14   April 16, 2020, the Ninth Circuit denied Conerly's request for a petition for rehearing.  *See United

15   States v. Conerly*, 18-10454, Dkt. No. 42.  The mandate issued on April 24, 2020.  (Dkt. No. 113.)

16   On July 8, 2020, Conerly filed a petition for a writ of certiorari.[1]  *See United States v. Conerly*, 18-

17   10454, Dkt. No. 44; *see also* Declaration of Jennifer Lancaster ("Lancaster Decl.") Ex. 15.  The

18   Supreme Court denied Conerly's petition on November 9, 2020.  *See United States v. Conerly*, 18-

19   10454, Dkt. No. 46; *see also* Lancaster Decl. Ex. 15.

20       Conerly's judgment of conviction became final on November 9, 2020, and his one-year

21   period to file his Section 2255 began running on that day.  Thus, his deadline to file his motion

22   was November 9, 2021.  On September 27, 2021, before the expiration of the deadline, Conerly

23   submitted a request for a ninety-day extension of time to file his Section 2255 motion, which the

24   _____

25   [1] The period to file a petition for a writ of certiorari runs from the date the Ninth Circuit denied
     Conerly's petition for rehearing, which was April 16, 2020.  Typically, Conerly would have had
26   ninety days within which to seek a writ of certiorari.  *See* Sup. Ct. R. 13(1).  However, because of
     the COVID-19 pandemic, the Supreme Court extended the deadline to file any petition for a writ
27   of certiorari to 150 days from the lower court's order denying a timely petition for hearing.
     https://www.supremecourt.gov/orders/courtorders/031920zr_d1o3.pdf. U.S. Supreme Court Order
28   List 589.  This rule, which was in effect from March 19, 2020 to July 19, 2021, was in effect at the
     time of Conerly's petition.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Court granted.  (*See* Dkt. Nos. 121, 123.)  Conerly filed his motion on January 3, 2022, within the

2  extended time afforded by the Court.

3          Accordingly, Conerly's Section 2255 motion is timely.

4  **C.      The Court Denies Conerly's Claim of Ineffective Assistance of Counsel.**

5          To prevail on a claim of ineffective assistance of counsel, a petitioner must show both that

6  his counsel's representation was deficient by an "objective standard of reason" and that he was

7  prejudiced.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  There is a strong

8  presumption that counsel's behavior was reasonable.  *Id.* at 689; *see also Babbit v. Calderon*, 151

9  F.3d 1170, 1173 (9th Cir. 1998) (reasoning relevant inquiry is whether choices made were

10  reasonable, not what counsel could have done).  Courts afford counsel wide latitude in formulating

11  trial tactics and strategy.  *Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir. 1995).  Prejudice occurs

12  only when "there is a reasonable probability that, but for counsel's unprofessional errors, the result

13  of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  The Court need not

14  consider one prong of *Strickland*, either deficiency or prejudice, if there is an insufficient showing

15  of the other.  *Id.* at 697.

16          **1.      Counsel's failure to object to the PSR did not prejudice Conerly**

17          Conerly argues he received deficient and prejudicial assistance because Dressler failed to

18  object to statements in the PSR.  The PSR includes a description of the offense conduct based on

19  information provided by the United States Attorney's Office, which included investigative reports

20  prepared by the Berkeley Police Department and the FBI.  (PSR ¶ 4.)  The PSR characterized the

21  events leading up to Conerly's arrest as follows: Conerly went to his former girlfriend's home

22  intoxicated.  (*Id.* ¶ 5.)  Fearing for her safety, his former girlfriend grabbed a baseball bat for

23  protection.  (*Id.*)  Conerly then took the bat from his former girlfriend and threw it at her, hitting

24  her leg.  (*Id.*)  When officers arrived, Conerly fled from them and failed to comply with verbal

25  commands.  (*Id.* ¶ 6.)  The officers eventually detained Conerly and discovered a handgun in the

26  area where he was detained.  (*Id.*)  While escorting him to the patrol car, Conerly became

27  combative and threatened to kill the officers.  (*Id.* ¶¶ 7-8.)  Conerly repeatedly hit his head on the

28  plexiglass that divides the front and rear cabins of the patrol car and attempted to kick out the rear

United States District Court
Northern District of California

1   driver side window while in transit to the Berkeley jail.  (*Id.* ¶ 9.)

2       Conerly claims the statements in the PSR about the bat throwing and the encounter with

3   the officers led the Court to refer to him as "violent" at the sentencing hearing.  Conerly asserts

4   evidence existed that would have lessened the appearance of violence including: recorded

5   statements from his former girlfriend that she was fine and did not sustain any injuries; that

6   Conerly had never been aggressive toward her; he threw the bat and it hit her leg as opposed to

7   statements that he threw the bat *at* her; and text messages proving Conerly did not unexpectedly

8   show up at her home, but instead that she had invited him over.  Conerly also argues Dressler

9   should have mitigated the violent characterization of his encounter with the officers by introducing

10  evidence of the police officers' lack of injuries; the lack of any signs of damage to the inside of the

11  vehicle; and the lack of injuries to Conerly's forehead and nose which would have been expected

12  from someone hitting their head on the plexiglass divider.  Conerly contends Dressler's failure to

13  introduce this evidence and failure to object to these statements in the PSR constituted ineffective

14  assistance of counsel.

15      Here, Dressler's failure to object to the statements in the PSR did not prejudice Conerly

16  because the Court did not solely rely on the throwing of the bat or the encounter with the officers

17  in determining Conerly's sentence.  The Court took into consideration other undisputed facts such

18  as how Conerly fled from the officers, possessed a firearm with an extended magazine in

19  connection with a drug sale, and threatened to kill the arresting officers.  The Court also relied on

20  Conerly's previous convictions and probation violations and explained that his past convictions

21  and probationary periods had failed to deter him from possessing a firearm.  Thus, even if Dressler

22  had objected to the statements in the PSR, the outcome at sentencing would not have been

23  different, and Conerly cannot show he was prejudiced by any failure to make certain objections to

24  the PSR.  *See Strickland*, 466 U.S. at 694 (to demonstrate prejudice, there must be a reasonable

25  probability that, but for counsel's errors, the result of the proceeding would have been different).

26      The Court need not consider the deficiency prong because there is an insufficient showing

27  of prejudice.  *Id.* at 697.  Accordingly, the Court finds Conerly did not receive ineffective

28  assistance of counsel because of Dressler's failure to object to certain statements in the PSR.

United States District Court
Northern District of California

### 2.    Counsel did not provide deficient assistance in advising Conerly to accept the (c) plea

"A defendant's Sixth Amendment right to counsel 'extends to the plea-bargaining process.'" *Bhatia v. United States*, No. C 11-4875 SBA, 2014 WL 12883303, at *6 (N.D. Cal. Jan. 17, 2014) (quoting *Lafler v. Cooper*, 566 U.S. 156, 162 (2012)). Under the deficiency prong "to prove ineffective assistance during the plea phase of a prosecution, the defendant 'must demonstrate gross error on the part of counsel . . .'" *Id.* (quoting *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002)). The question is "not whether 'counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases.'" *Id.* (quoting *Turner*, 281 F.3d at 880). "The advice must be 'so incorrect and so insufficient that it undermined [the defendant's] ability to make an intelligent decision about whether to accept the plea offer.'" *Id.* (quoting *Turner*, 281 F.3d at 880). "To show prejudice from rejecting a plea offer, the defendant must show that, but for the counsel's deficient performance, there is a reasonable probability that: (1) 'the defendant would have accepted the plea'; (2) 'the prosecution would not have withdrawn [the plea] in light of intervening circumstances'; (3) 'the court would have accepted its terms'; and (4) 'the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" *Id.* at *8 (quoting *Lafler*, 566 U.S. at 164).

Conerly alleges Dressler provided ineffective assistance with regard to a plea offer by the Government pursuant to Federal Rule of Criminal Procedure 11(c) (the "(c) plea"). The (c) plea offered a range of 57-87 months imprisonment. Conerly did not want to accept the (c) plea without knowing what his CHC calculation would be. Dressler warned Conerly that he would not be able to guarantee or predict with certainty Conerly's CHC but believed Conerly's CHC would likely be category IV.[2] (Dressler Decl. ¶¶ 16, 18(d).) Conerly did not accept the (c) plea offer, and it expired. Conerly also rejected the Government's other plea offer. (*See id.* ¶ 19.)

Conerly argues Dressler's assistance was deficient and prejudicial because Dressler should

---

[2] Any concerns about Conerly's CHC calculation would have been resolved with the acceptance of the (c) plea because the agreement, if accepted by the Court, required the Court to impose a sentence within the range of 57-87 months.

United States District Court
Northern District of California

1 | have taken additional steps to confirm Conerly's CHC, including arguing for the exclusion of

2 | Conerly's marijuana conviction at an earlier time before sentencing, requesting the Probation

3 | Office conduct a pre-plea criminal history category determination, or asking the Government if it

4 | would make a CHC determination in advance.

5 |      Dressler's actions do not constitute gross error and did not render counsel ineffective under

6 | the deficiency prong.  The argument to exclude Conerly's marijuana conviction from his CHC,

7 | which would have resulted in a decrease of Conerly's CHC from IV to III, was an issue of first

8 | impression, and Dressler was unsure whether the Court would accept the argument.  Thus, it was

9 | not unreasonable for Dressler to advise Conerly that his felony marijuana conviction would likely

10 | be included in the CHC calculation, resulting in a CHC IV.

11 |      Dressler's advice regarding Conerly's likely CHC category was also consistent with the

12 | Probation Office's CHC recommendation in the PSR.  Thus, Dressler's "failure to request a pre-

13 | plea criminal history report, which would have simply confirmed that [Conerly] was in criminal

14 | history Category [IV], certainly did not fall outside the range of professionally competent

15 | assistance."  *Chen v. United States*, No. CV 11-489-JFW, 2011 WL 13305163, at *5 (C.D. Cal.

16 | Aug. 5, 2011) (finding counsel's failure to request a pre-plea criminal history report did not

17 | constitute ineffective assistance of counsel because counsel correctly determined petitioner's

18 | criminal history category and provided a reasonable estimate of the sentencing range under the

19 | Guidelines).

20 |      Furthermore, in advising Conerly to accept the (c) plea, Dressler provided Conerly with a

21 | Guidelines Sentencing Table and a breakdown of the possible outcomes were Conerly to accept

22 | any of the Government's proposed plea agreements, including the potential guidelines ranges that

23 | would attach based on the Court's CHC determination.  (Dressler Decl. ¶ 18; *id*., Ex. 8.)  Thus, the

24 | Court concludes Conerly has failed to show Dressler's actions were not within the range of

25 | competence demanded of attorneys in criminal cases.  *See United States v. Sua*, No. CR 98-00411

26 | HG-02, 2013 WL 3872791, at *4 (D. Haw. July 24, 2013) (finding no ineffective assistance of

27 | counsel where counsel advised the defendant of the charges, penalties, CHC, and recommended he

28 | accept the government's plea offer).

The Court need not consider the prejudice prong because there is an insufficient showing of deficiency. *Strickland*, 466 U.S. at 697. Accordingly, the Court finds Conerly did not receive ineffective assistance of counsel because of Dressler's failure to further investigate Conerly's CHC in advising him to accept the (c) plea.

### 3. Counsel did not provide prejudicial assistance in advising Conerly to plead open

"A guilty plea is valid only to the extent it is 'voluntary' and 'intelligent.'" *Kingsbury v. United States*, 783 Fed. App'x 680, 682 (9th Cir. 2019) (quoting *Bousley v. United States*, 523 U.S. 614, 618 (1998)). "A plea is voluntary if it 'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Id.* (quoting *United States v. Kaczynski*, 239 F.3d 1108, 1114 (9th Cir. 2001)). A defendant who enters a guilty plea on the advice of counsel may generally only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985). A defendant seeking to challenge the validity of his guilty plea on the ground of ineffective assistance of counsel must satisfy the *Strickland* test by showing "that (1) his 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Womack v. Del Papa*, 497 F.3d 998, 1002 (9th Cir. 2007) (quoting *Hill*, 474 U.S. at 57-59).

Conerly alleges Dressler provided deficient and prejudicial assistance because Dressler failed to advise Conerly about the Government's intention to file a superseding indictment with additional charges if Conerly did not plead guilty by June 11, 2018. Conerly alleges he understood for the first time at the plea hearing that the Government would add charges if he did not plead guilty. Conerly alleges he was coerced into pleading open because he did not want the Government to bring additional charges.

Here, Dressler did not provide prejudicial legal assistance in advising Conerly to plead open. Dressler attests he advised Conerly and his family of the impending deadline for Conerly to

plead guilty to the current indictment on multiple occasions.  During these meetings, Dressler explained that Conerly's only options were to go forward with a jury trial, which would likely include additional charges, or to plead open.  Although Conerly claims that he was not informed of the Government's intention to file a superseding indictment if he did not plead guilty by June 11, 2018, it is undisputed that Conerly was advised of this information at the change of plea hearing.  Thus, Conerly cannot show prejudice because he was advised of the situation at the hearing on June 19, 2018 and chose to plead guilty that day rather than risk a superseding indictment.

Additionally, evidence in the record, which include Conerly's sworn statements made during his Rule 11 plea colloquy, directly contradicts Conerly's claims of coercion and ineffective assistance of counsel.  At the plea hearing, Conerly initially expressed concern about pleading guilty because he had unanswered questions.  The Court moved the case to the end of the calendar to allow Conerly to confer with Dressler about his unanswered questions, and Conerly conferred with Dressler multiple times during the hearing itself.  Before the Court began to voir dire Conerly, it asked Conerly if Dressler had answered his questions, to which Conerly answered yes. (6/19/2018 Tr. at 10:2-11.)  The Court then proceeded questioning Conerly regarding his willingness to plead guilty.  During that questioning, Conerly affirmatively answered "yes" when the Court asked whether he had considered the possibility that the Government might bring additional charges against him if he did not plead guilty, and whether Conerly had made an informed and intelligent decision to plead guilty to the current charges.  (*Id.* at 19:6-12.) Conerly's prior sworn statements carry substantial weight because "statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea." *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008). Thus, Conerly cannot show that he was coerced into pleading guilty.

Further, Conerly cannot show that he was coerced into pleading guilty based on the possibility that the Government would file a superseding indictment with additional charges.  The Court addressed this issue with Conerly during the plea colloquy, and Conerly affirmed that his decision to plead guilty was an informed and intelligent one made after weighing his options.  *See*

9

*Voskanyan v. Lizarraga*, No. 2:18-cv-08251-MWF-KES, 2019 WL 4391134, at *11 (C.D. Cal. June 13, 2019) (quoting *Brady v. United States*, 397 U.S. 742, 751 (1970) ("holding that 'a guilty plea is [not] compelled and invalid . . . whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged.'")).

Accordingly, the Court finds Conerly did not receive ineffective assistance of counsel based on Dressler's advice to accept the open plea.

### 4.  Conerly's remaining arguments fail

Conerly's opening motion raises several arguments that were not addressed in his reply. Conerly argues the Court improperly vouched for Dressler, causing Conerly to continue with Dressler's representation.  This argument fails because Conerly did not show how the Court's comments are attributable to Dressler's representation.  Conerly also argues the attorney-client relationship broke down because of irreconcilable differences over how to proceed with the sentencing memorandum.  Dressler allegedly declined to follow Conerly's requests to include a police report from a prior arrest because it was irrelevant and failed to return a copy of the police report back to Conerly at their next meeting.  Although Conerly was upset with Dressler's actions, Dressler's "failure to make an unmeritorious or futile argument cannot constitute deficient performance." *Taylor v. Jaime*, No. 8:19-cv-01085-FWS (SP), 2022 WL 4472472, at *6 (C.D. Cal. Aug. 23, 2022).  Finally, Conerly claims that he was coerced to plead guilty because Dressler represented that he would receive a guidelines range of 57-87 months imprisonment if he pled guilty.  Conerly's sworn statements during the plea hearing contradict this claim.  Conerly stated the only promise made for pleading guilty was for the Government to not bring a superseding indictment; he did not claim Dressler told him he would receive a sentence within the range of 57-87 months.

### D.  A Certificate of Appealability Is Not Warranted.

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires a district court to rule, in the same order in which the motion for relief is denied, on whether a petitioner is entitled to a certificate of appealability.  A petitioner is entitled to a certificate of appealability when he

United States District Court
Northern District of California

shows that reasonable jurists could find the district court's decision "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a court may grant a certificate of appealability where the issues presented "are adequate to deserve encouragement to proceed further." *Id.* at 483-84 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Here, Conerly has failed to make a substantial showing that a reasonable jurist would find this Court's denial of his claim debatable or wrong. *Slack*, 529 U.S. at 484. Consequently, no certificate of appealability is warranted in this case.

## CONCLUSION

For the foregoing reasons, the Court DENIES Conerly's motion to vacate his sentence, pursuant to Section 2255, and DENIES a motion for certificate of appealability.

**IT IS SO ORDERED.**

Dated: October 31, 2022

_____
JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California